UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NICHOLAS MASON,<br><br>          Plaintiff,<br><br>     v.<br><br>C. RIGNEY, *et al.*,<br><br>          Defendants. | Case No. 2:23-cv-00676-RFB-BNW<br><br>**ORDER** |

Before the Court are *pro se* Plaintiff Nicholas Mason's Motion for a Temporary Restraining Order (ECF No. 4) and Motion for a Preliminary Injunction (ECF No. 5) and Interested Party Nevada Department of Corrections' Motion for Leave to File Document (ECF No. 9). For the reasons below, the Motion for a Preliminary Injunction and Motion for Leave to File Document are granted and the Motion for a Temporary Restraining Order is denied as moot.

**I.     PROCEEDURAL BACKGROUND**

On May 1, 2023, Plaintiff Nicholas Mason filed a Motion for Leave to Proceed *in forma pauperis* ("IFP"). ECF No. 1. On July 25, 2023, Mason filed a First Amended Complaint. ECF No. 3. In the FAC, Mr. Mason sued multiple Defendants for events that allegedly occurred during his incarceration. ECF No. 3. On August 24, 2023, Mason filed a single document titled "Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction," which was filed as an identical Motion for a Temporary Restraining Order (ECF No. 4) and Motion for a Preliminary Injunction (ECF No. 5).

On December 12, 2023, the Court issued a Screening Order allowing the First Amended Complaint to be filed and for three claims to proceed: (1) a First Amendment retaliation claim

against Defendant Rigney, (2) an Eighth Amendment excessive force claim against Defendant Rigney, and (3) an Eighth Amendment deliberate medical indifference claim against Defendants Rigney, Kleer, Minev, Rivas, and several Doe defendants. ECF No. 6. Additionally, the Court ordered the Office of the Attorney General ("OAG") to make a limited appearance indicating which Defendants, if any, they would accept service of process for and to respond the Motion for a Temporary Restraining Order and Preliminary Injunction. Id.

On December 21, 2023, the OAG filed a limited appearance on behalf of Interested Party Nevada Department of Corrections ("NDOC"). ECF No. 7. On January 4, 2024, the NDOC filed a Response and a Motion for Leave to filed Documents regarding that Response. ECF Nos. 8, 9.[1] Medical documents related to Plaintiff were filed under seal. ECF Nos. 10, 11. On February 20, 2024, the Court set a hearing on the pending motions. ECF No. 13. On March 8, 2024, the early mediation conference was held and concluded without a settlement. ECF No. 15. On March 19, 2024, the Court held a hearing on the pending motions for a temporary restraining order and a preliminary injunction. ECF No. 21. NDOC filed supplementary medical records, many of which are illegible, on March 20, 2024. ECF No. 18, 19. That same day, Plaintiff's Application to proceed IFP was granted. ECF No. 20. The Court's Order follows.

II.     **FACTUAL FINDINGS**

Based on the record, the March 19th hearing, and credibility determinations made at the hearing, the Court makes the following factual determinations for this Order only.

At all relevant times, Nicholas Mason was incarcerated at High Desert State Prison. On July 5, 2022, Mr. Mason was shot in the face at close range by a projectile. The shot lifted him off his feet. Mr. Mason immediately suffered from pain and difficulty breathing. After a delay, Mr. Mason was taken to the local emergency room. At some point on July 5, 2022, Mr. Mason submitted a Medical Kite stating "I was shot in the nose by a 40 mm High Velocity Bullet. I'm in

---

[1] The Court finds NDOC has satisfied their burden to overcome the strong presumption of public access to judicial records. See Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 678 (9th Cir. 2010); Kamakana v. City of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006). Given the medical records concern Mr. Masons' private medical concerns, the Court finds sealing them to preserve Mr. Mason's confidentiality is appropriate.

pain and can't breath. PLS HELP." The response notes that Mr. Mason was sent to the ER and no acute fractures were identified by the medical staff there.

Over the subsequent year, Mr. Mason subsequently filed multiple kites and grievances seeking medical attention for worsening pain and difficulty breathing resulting from being shot in the face. For example, on June 26, 2023, Mr. Mason filed an Inmate Request Form seeking medical attention, stating that "I have put in several kites to medical about my nose on 10.17.22 & 10.24.22, this medical issue has progressively [gotten] worse since being shot in the face. And I have still not received a response or been seen by medical. PLS SEE ME."  On July 13, 2023, Mr. Mason filed an Inmate Request Form seeking medical attention, stating that "on several occasion[s] I put in medical kites about my nose and have not been seen. I am always in pain and can't breath – I believe I was shot in the nose. I would like to see the E.E.N.T. [(Ear, Eyes, Nose, Throat) specialist] and doctor." ***At no point since his January 5, 2022, emergency room visit has Mr. Mason received any form of medical care addressing his repeatedly raised concerns regarding pain and difficulty breathing stemming from being shot in the face. As of the date of this Order, Mr. Mason continues to suffer significant pain and difficulty breathing.***[2]

### III.  LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

---

[2] The NDOC noted a failed doctor's visit on March 6, 2024. However, the Court finds that in that situation Plaintiff was scheduled to see an NDOC physician but then that physician became unavailable. At the last minute, a nurse practitioner unfamiliar with Plaintiff's case or records attempted to speak with him but was so uninformed as to Plaintiff's that no assistance could be offered.

The Prison Litigation Reform Act ("PLRA") further provides that in any civil action with respect to prison conditions, any preliminary injunctive relief must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626 (a)(2).

**IV.   DISCUSSION**

The Court now turns to Mr. Mason's Motion for a Preliminary Injunction and considers each of the Winter factors in turn. For the reasons below, the motion is granted.

**A.   Likelihood of Success on the Merits**

The Court finds that Plaintiff has shown a likelihood of success on the merits. The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014).

First, the Court finds Mr. Mason has met his burden to show a serious medical need that, absent treatment, could result in "further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The evidence shows Mr. Mason suffers from continual and substantial pain. See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), (noting that "the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious medical need" for medical treatment.") overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

Second, the Court finds that Mr. Mason has met his burden to show deliberate indifference. That burden requires a plaintiff to show "(a) a purposeful act or failure to respond

to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. When a prisoner alleges that delay of medical treatment evinces deliberate indifference, they must show that the delay led to further injury. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference"). The evidence shows that, for more than 600 days, despite Mr. Mason's repeated notifications to NDOC regarding his ongoing pain and need for medical attention following the July 5th shooting, at no point did any NDOC official provide him appropriate and responsive medical care.

The Court finds that facts before it represents more than delay, it represents an outright refusal to engage with a serious medical issue. Cf. Von Tobel v. Johns, No. 20-16853, 2022 U.S. App. LEXIS 13469, at *5-6 (9th Cir. May 18, 2022) (finding a triable material fact regarding the whether a denied surgery was deliberate medical indifference where denied as unnecessary without proving a medial reason for the determination). NDOC insists that they have reasonably acted to respond to Mr. Mason's medical requests and point to a March 6, 2024, medical appointment as proof of their efforts. The supplementary records by NDOC are in large parts illegible and, where the Court can discern their contents, they appear to represent that Mr. Mason expressed confusion about being seen by a nurse practitioner who had not been scheduled to see him and who was unfamiliar with this case. The Court finds that it is unclear if the nurse practitioner was even attempting to address Mason's pain and breathing problems. This means that his condition continued to go untreated.

Further, even under the version of events asserted by NDOC's counsel (which the Court is not crediting), the Court finds an attempt to rely upon brief interaction with a nurse practitioner under these circumstances is insufficient to summarily deny medical care. See Snow, 681 F.3d at 988 ("[A] reasonable jury could conclude that the decision of the non-treating, non-specialist physicians to repeatedly deny the recommendations for surgery was medically unacceptable under all of the circumstances."); Hamilton v. Endell, 981 F.2d 1062m 1067 (9th

Cir. 1992) ("By choosing to rely upon a medical opinion which a reasonable person would likely determine to be inferior, the prison officials took actions which may have amounted to the denial of medical treatment, and the 'unnecessary and wanton infliction of pain.'"), overruled in part on other grounds in Snow, 681 F.3d at 986; Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) (prisoner not referred to specialist for reasons unrelated to the prisoner's medical needs and medical records were manipulated); Colwell v. Bannister, 763 F.3d 1060, 1070 (9th Cir. 2014) (reliance on arbitrary prison policy). And, this would still lead to there being a serious question going to the merits of the case.

Finally, the Court finds further evidence of the need for Mr. Mason to receive treatment based upon a supplemental filing by NDOC after the hearing. This filing indicates Mason was seen by an NDOC doctor after the hearing who ordered: (1) a CT scan of Mason's head for "severe headaches with ethmoid pain and loss [of] vision [in right] eye and recurrent nasal congestion" with worsening pain due to facial trauma two years ago; (2) CT scan of the temporal bone due to "worsening nasal congestion and ear pressure;" and (3) "ENT referral for worsening nasal congestion and ear pressure after facial trauma two years ago." As these requests have not been completed and appear to have been prompted by the Court hearing, the Court does not find further action to be moot. See S. Oregon Barter Fair v. Jackson Cty., Oregon, 372 F.3d 1128, 1134 (9th Cir. 2004) ("The party asserting mootness bears the burden of establishing that there is no effective relief remaining that the court could provide"); Forest Guardians v. Johanns, 450 F.3d 455, 461 (9th Cir. 2006) ("That burden is 'heavy;' a case is not moot where any effective relief may be granted.").

### B. Remaining Factors

The Court finds that Mr. Mason has shown a likelihood of irreparable harm in the absence of injunctive relief. The "unnecessary continuation of a[n incarcerated person's] condition and pain cause 'harm' upon which a" deliberate medical indifference action can be based. McGuckin, 974 F.2d at 1062; Colwell, 763 F.3d at 1068 (explaining the indefinite continuation of an injury can be "harm in and of itself, along with all of the other harms and dangers that flow from that.").

- 6 -

Next, the Court finds that the balance of the equities tips sharply in Plaintiff's favor. The Prison Litigation Reform Act requires that injunctive relief granted to prisoners be narrowly drawn. In line with this mandate, the Court narrows Mr. Mason's requested injunctive relief to only to those medical issues which he has identified in numerous kites to prison officials and at the hearing in this case. This relief will be limited to medical treatment ordered by NDOC doctors' on March 20, 2024 and any necessary follow up treatment. By contrast, Mr. Mason absent injunctive relief would continue to suffer substantial, ongoing pain and difficulty breathing.

Finally, the Court also finds that issuing a preliminary injunction is in the public interest. It is always in the public interest to prevent the violation of constitutional rights. Melendres v. Arpair, 695 F.3d 990, 1002 (9th Cir. 2012).

### C. Conclusion

The Court finds that a Preliminary Injunction is appropriate at this time. Because the Court grants Plaintiff's request for a preliminary injunction, his Motion for a Temporary Restraining Order is denied as moot. As an indigent *pro se* incarcerated person, the Court finds that Mr. Mason is unable to post security for the interim injunctive relief. Under the Court's discretion, he should be excused from depositing security. See Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (the district court may dispense with the filing of a bond).

### V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that *pro se* Plaintiff Nicholas Mason's Motion for a Preliminary Injunction (ECF No. 5) is **GRANTED** and Plaintiff's Motion for a Temporary Restraining Order (ECF No. 4) is **DENIED** as moot. The Nevada Department of Corrections is **ORDERED** to provide Mr. Mason with the treatment requested by NDOC doctors' on March 20, 2024, including but not limited to:

**(1)** The two types of CT scans ordered on March 20;

**(2)** Referral to an outside ENT specialist; and

**(3)** Any follow up treatment ordered as a result of these tests/exams.

1    **IT IS FURTHER ORDERED** that the tests and ENT exam must be completed **May 10,**
2    **2024,** or the Court will consider sanctions for every day that treatment/examination is delayed.

3    **IT IS FURTHER ORDERED** that Counsel for Nevada Department of Corrections is
4    instructed to file before **May 10, 2024,** a Notice of Compliance, under seal, that the tests and
5    exam have occurred.

6    **IT IS FURTHER ORDERED** that Nevada Department of Corrections' Motion for
7    Leave to File Document is **GRANTED**.

8    **IT IS FURTHER OREDERED** that a video status conference in this matter is set
9    for **June 7, 2024, at 10:00 a.m.**

10   **IT IS FURTHER ORDERED** that Counsel Nevada Department of Corrections is
11   instructed to file a submission, under seal, with any medical records resulting from the
12   consultation and treatment resulting from this Court's instant Order. Such a submission will be
13   filed on or before **June 1, 2024**.

14   **IT IS FURTHER ORDERED** that the Clerk of Court is instructed to provide a courtesy
15   copy of this Order to Mr. Mason via first-class United States postage.

17   **DATED:** March 25, 2024.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

- 8 -